## David Shelton v. W. L. Keirn.

1. Commissioner of General Land Office — Decision by him not binding on the Courts. — A decision by the commissioner of the general land office of the United States, or of any other officer, in respect to conflicting claims to land, does not affect the power of the courts to decide on the facts and law of a case involving them, and has no binding force upon the courts.

2. Public Lands — Mode of Disposition — Discretion of Congress on the Subject. — Congress has a discretion as to the manner of disposing of the public lands of the United States, and is not confined to conveying title by patent, but may select any other mode and declare the effect as evidence of any other form of conveyance.

3. Jefferson College — Grant of Land — Effect of Certificate of Register on Location under Transfer from the College. — The certificate of the register of the land office to the assignee of Jefferson College, who had located his claim, by virtue of the act of congress of the 20th April, 1832, for the relief of that college, is equivalent to a patent, and a patent for the same land afterward issued by the United States to another person is void.

4. Same — Same — Consequence of Location embracing Land Appropriated — Void as to such, but not in toto. — Under the requirement of the act of congress of 20th April, 1832, for the relief of Jefferson College, that the lands granted should be located in bodies not less than two sections, and that each location should be of one body of contiguous lands, and on unappropriated land, such location, where it afterward appears that part of the land was an Indian reservation and another part was a pre-emption claim, together covering nearly one-half, is void only as to so much as was embraced in the reservation and pre-emption, and good for the rest, although the contiguity of the remaining parts was destroyed.

Error to the circuit court of Holmes county. Campbell, J.

The facts appear in the opinion of the court.

*D. Shelton,* in proper person,

Cited act of congress, April 20, 1832, 6 U. S. Stat., p. 484; 1 Brightley's Dig. 462, § 1; ib., §§ 3 and 4; ib., §

8; ib., § 28, p. 465; the treaty at Dancing Rabbit Creek, between the Choctaws and the United States, art. 19; Hutch. Miss. Code, p. 125; the pre-emption act of 1833; 1 Brightley's Dig., p. 526, § 382; ib. 464, § 41; ib. 465, § 42; 3 Washb. on Real Prop. 526–530, and authorities there cited; 5 How. 757.

*Harris & Withers*, for defendant in error,

Cited Fulton, etc., v. McAfee, 5 How. (Miss.); 7 Smedes & Marsh. 780; act of congress, April 20, 1832; Lindsey et al. v. Haws et al., 2 Black. (U. S.) 554; Garland v. Wynn, 20 How. 8; Little v. State of Arkansas, 22 ib. 192; Choctaw treaty of 1830; pre-emption act of 1834; U. S. v. Stone, 2 Wall. 525; Plat in Walden v. Bodley, 9 How. (U. S.) 34; Stringer v. Young, 3 Pet. 320; Boardman v. Lessee of Reed, 6 ib. 328; Broderick v. Bagnell, 13 ib. 235; Hughes v. U. S., 4 Wall. 232; 11 How. (U. S.) 552; 7 Smedes & Marsh. 363; Cunningham v. Ashley, 14 How. (U. S.) 377.

PEYTON, C. J.:

This was an action of ejectment brought by David Shelton, in the circuit court of Holmes county, against Walter L. Keirn, to recover certain land in said county.

The plaintiff's title is founded on an ordinary entry of the land in controversy, under the act of congress of the 24th of April, 1820, and a patent therefor from the United States, bearing date the 10th day of August, 1859.

The defendant's title rests on a patent certificate issued to Joseph McAfee, by the register of the land office at Mount Salus, as assignee of Jefferson College, on the 16th day of August, 1834, under the act of congress of April the 20th, 1832, for the relief of that college. And said McAfee, after the date of said patent certificate for the land sued for in this action, conveyed the same to one Vendex Keirn, brother of the defendant, who is his heir at law.

The act of congress under which McAfee's location was

made, provided that the lands granted to Jefferson College in this state in lieu of lands relinquished by the college in Alabama, should be located in bodies of not less than two sections in quantity, and that each location should be of one body of contiguous lands, and that said locations should be made on unappropriated lands.

McAfee's location was made of two sections in one contiguous body, but it turned out in after years that part of his location covered lands which were reserved to Indians under the Choctaw treaty of 1830, and lands secured to settlers under the pre-emption laws of congress of 1834. These Indian reservations and pre-emption rights not only reduced the quantity but destroyed the continuity of the location. And for this reason the commissioner of the general land office, at the city of Washington, in his correspondence with the register of the land office here, declared the location to be illegal and void.

McAfee's certificate of location was never annulled, unless the declaration of Shields, the commissioner of the general land office, had that effect; nor did McAfee, or those claiming under him, ever apply to make another location, or for compensation for the part lost by pre-emption rights and Indian reservations, which reduced his location in quantity to about one-half.

Hence it will readily be perceived that the important question presented for our determination is, whether McAfee's *entire* location was rendered void by reason of the conflicting claims of pre-emptors and Indian reservers, or only void to the extent of those interfering claims. And the solution of this question will necessary involve the consideration of the effect of the opinion of the commissioner of the general land office as to this location upon the patent certificate issued by the register of the land office at Mount Salus, in 1834, to McAfee.

There is nothing to be found in the various acts of congress at the date of Joseph McAfee's certificate, on the subject of conflicting claims to sanction the idea that either the

register or the commissioner had the power to decide con-
clusively on the validity of a patent certificate already
issued, or a grant already complete in form. The power
given to the register to decide between conflicting claims
clearly relates to the claim to make the *entry*, on which the
grant of the patent is to be founded, and this decision is to
be made at the time of the application to make such entry.

The opinions and decisions of the officers of the general
land office never have been regarded as conclusive of title,
because they were opinions on a question of law, which is
always a question for the courts. These officers possess no
judicial power in the matter of conflicting claims to land
after entry and certificate. It is believed that there is no
point more firmly settled by the decisions of the supreme
court of the United States, than that no decision by these
or any other officer of the United States, in respect to con-
flicting claims to land, affects the power of the courts of the
country to decide on the facts and the law, in controversies
involving such conflicting claims.

In the case of Cunningham v. Ashley et al., 14 How.
377, Cunningham by his bill in equity claimed, on the 27th
of May, 1836, the right of pre-emption to the south-east
quarter of section 3, in township 1 north, in range 12 west
of the fifth principal meridian south of Arkansas river,
under the act of the 29th of May, 1830. His claim to
which appears to have been clearly established by the testi-
mony, but it was rejected by the register and receiver of
the land office at Batesville. Various efforts were made by
him at said land office, and at the general land office at
Washington, to procure a recognition of his pre-emption
claim. Appeals on the subject were made to the secretary
of the treasury, and to the attorney-general, all of which
resulted in the denial of his claim, on the ground that the
quarter section was not subject to a pre-emption right, by
reason that two New Madrid certificates had been laid on
the same land ; one on the 19th of April, 1820, and the other
on the 1st of May of the same year.

The defendants, Ashley and Beebe, in their answer aver, that they caused application to be made by legal and valid floating pre-emption rights, which they were fully authorized by law to locate on the said south-east quarter of section 3, the same being vacant land, and liable by law to be entered by such floating rights, and that they caused the same to be entered, the east half in the name of Samuel Plummer, and the west half in the name of Mary L. Jenbeau, according to law, and all the lawful rules and regulations of the general land office, and were duly patented to the said Beebe by the president of the United States, on the 25th of September, 1839.

The commissioner of the general land office, in his letter to the secretary of the treasury, in favor of the above floats, decided and declared that the claim of the complainant, Matthew Cunningham, under the pre-emption act of congress of the 29th of May, 1830, had no validity.

And on the 15th of July, 1839, it appeared by the certificate of the receiver at Little Rock, that the said Cunningham again tendered the money in payment for the quarter section in controversy. Every legal requisite appears to have been complied with under the act of 1830 to entitle him to a pre-emption. His improvement and occupancy under the law were fully established, and yet his claim was not allowed, on account of said New Madrid locations, and was decided by the commissioner of the general land office, as above stated, to have no merit, and to be utterly null and void.

In the determination of this case upon the merits between these parties, the court disregarded the decisions and declarations of the officers of the land office, and decided that although the legal title to the land in controversy was in the defendants, Ashley and Beebe, the complainant, Cunningham, had a paramount equity to the land, and decreed that said Beebe, and the heirs of said Ashley, deceased,. should execute a quit-claim deed of said land to said Cun-

ningham, upon payment of the minimum price of the public land with interest, etc.

The clearest statement of the rule on this subject, as established by the supreme court of the United States, is to be found in the case of Garland v. Wynn, 20 How. 8. Wynn's entry, which was the elder, had been set aside, and the money refunded, and a patent certificate awarded Hemphill, who assigned to Garland, to whom the patent issued. Wynn brought his suit in equity to compel Garland to convey to him the legal title, on the ground that these proceedings by the land officers were illegal, and that he had the equitable right. Garland insisted that the circuit court had no authority or jurisdiction to set aside or correct the decision of the register and receiver, and that their adjudication was conclusive. Mr. Justice Catron, in delivering the opinion of the court, says: "The general rule is, that where several parties set up conflicting claims to property, with which a special tribunal may deal, as between one party and government, regardless of the rights of others, the latter may come into the ordinary courts of justice and litigate the conflicting claims. Nor do the regulations of the commissioner of the general land office, whereby a party may be heard to prove his better claim to enter, oust the jurisdiction of the courts of justice. *We announce this to be the settled doctrine of this court.*"

In the case of Little et al. v. the State of Arkansas, the same court declared it to be too well settled to admit of discussion, that the *adjudication* of the register and receiver with regard to entries of land is subject to revision in courts of justice. 22 How. 192.

The doctrine of the above cases has been reiterated and confirmed by the supreme court of the United States in the recent case of Lindsey et al. v. Hawes et al., 2 Black, 554.

These officers have certain duties to perform which require the exercise of judgment, which has never been regarded as conclusive upon the rights of those whose interests may be

affected thereby, but may be the subject of revision and correction by the courts of the country.

We are not now disposed to question the justness and soundness of these decisions, and think they clearly settle the question raised by the plaintiff as to the effect to be attributed to the decisions of these officers with reference to entries of land.

In this case there is no evidence in the record to impeach the fairness and good faith on the part of Joseph McAfee in making the location of his Jefferson College float on the land in controversy, and if his title arises to the dignity of a legal title, the defendant who claims under a deed of conveyance from him must prevail in this action, in which the legal title alone is in issue. And this makes it necessary to inquire and ascertain what is the character of the title acquired by Joseph McAfee, by virtue of the patent certificate issued to him by the register of the land office on the 16th of August, 1834.

It is certainly within the power and discretion of congress to adopt such means of disposing of the public domain as may seem expedient. Usually, the final grant to purchasers is made by patent, and this is done in pursuance of a general law, but it does not follow that there can be no other mode of disposing of it. It may be and often is granted by act of congress without patent, and such disposition effectually passes the legal title, so the conveyance may be made by a general or special agent appointed by law, or by law it may be declared what shall amount to a grant, or what shall pass the title, the patent is a mode prescribed by law and its effects declared by law. The mode may be changed, both as to the officer who shall execute it, and the manner of doing it, and the effect or dignity of a title made according to any prescribed form may be regulated and declared by congress.

The fourth section of the act of congress authorizes the person legally holding a deed of transfer, under the corporate seal of the college, to make the entry for the quantity

transferred, and to receive a certificate from the register of the land office of the proper district, to be issued to the legal holder of such deed of assignment as the assignee of Jefferson College, and declares that the title under such certificate shall be accounted and held as valid and complete as if a patent had issued therefor.

It is insisted by the plaintiff that the entire location should be upon unappropriated land ; and, inasmuch as the continuity of the entry was broken by an Indian reservation, and parts of it were taken by pre-emption rights and Indian reservations, which were subsequently proved up and established, the entire entry and location was void. We do not concur with the plaintiff in this view of the law. McAfee, upon the establishment of the interfering claims, might have raised his location and located his college float upon two contiguous sections of land elsewhere. This he was not compelled to do. He could not, while the original location remained, have entered elsewhere the quantity of land lost by pre-emptions and Indian reservations ; and because he lost part of his entry by interfering claims, furnishes no good reason why he should lose the balance. The entire location was not void, but was good and valid as to all the lands covered by it, with the exception of those taken by the pre-emption rights and Indian reservations.

If this be a correct view of the law, it follows that the title of the government to the land in controversy was divested by the patent certificate issued to McAfee in 1834, and that certificate having been declared by congress to be equivalent to a patent, gave him a full and complete legal title to the land in controversy, and that the entry of the plaintiff under the act of congress of 1820, and the patent to him, were null and void, and conferred no title on the plaintiff.

The judgment must, therefore, be affirmed.